## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18-cv-0042 (KBJ) |
| GENERAL SERVICES ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION</u>

On January 8, 2018, Plaintiff Environmental Integrity Project ("EIP") filed the

instant action against the General Services Administration ("GSA") under the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, seeking certain travel reports that the

Environmental Protection Agency ("EPA") and the Department of the Interior ("DOI")

were legally required to submit to GSA.  (Compl., ECF No. 1, ¶ 1; Ex. 1 to Compl.,

ECF No. 1-1, at 1–2.)[1]  During the pendency of this lawsuit, GSA referred EIP's request

to EPA and DOI, and those agencies ultimately released the travel reports to EIP.  (*See*

Exs. G–I to Pl.'s Mot. for Att'ys' Fees & Costs ("Pl.'s Mot. for Fees"), ECF No. 22-7,

at 34–47.)  Once GSA confirmed that the released records matched those in its internal

system (*see* Ex. A to Pl.'s Mot. for Fees, ECF No. 22-7, at 3), EIP agreed to dismiss all

of the claims in its complaint, except its claim for an award of attorneys' fees and costs

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns. EIP had requested the records that are the subject of the instant action from GSA on November 2, 2017, pursuant to the FOIA.  (*See* Compl. ¶ 17.)

(*see* Ex. J to Pl.'s Mot. for Fees, ECF No. 22-7, at 50; Joint Mot. to Stay, ECF No. 19, at 1).

Then, on September 19, 2018, EIP filed a motion for a fee award under the FOIA (*see* Pl.'s Mot. for Fees, ECF No. 22, at 1), arguing that it had substantially prevailed in this lawsuit by causing GSA to refer its FOIA request to EPA and DOI, under circumstances in which the agency had failed to produce the records based solely on EIP's FOIA request (*see* Pl.'s Mem. in Supp. of Mot. for Fees ("Pl.'s Mem."), ECF No. 22-1, at 8–9).  This Court referred EIP's motion to a Magistrate Judge for resolution (*see* Min. Order of Sept. 20, 2018), and the matter was randomly assigned to then-Magistrate Judge Deborah Robinson (*see* Min. Entry of Sept. 20, 2018).

Before this Court at present is Magistrate Judge Robinson's Report and Recommendation (*see* R. & R., ECF No. 25), which proposes denying EIP's motion on the ground that EIP is ineligible to recover fees under the FOIA (*see id.* at 7).  EIP has submitted timely objections to the Report and Recommendation (*see* Pl.'s Objs. to R. & R. ("Pl.'s Objs."), ECF No. 26), and GSA has filed a response thereto (*see* Def.'s Resp. to Pl.'s Objs., ECF No. 29; *see also* Pl.'s Reply in Supp. of Objs., ECF No. 30).  This Court has carefully considered the Report and Recommendation, the parties' submissions, and the record evidence, and for the reasons discussed fully below, the Court concludes that EIP's lawsuit served as the catalyst for GSA's referral of EIP's FOIA request to EPA and DOI, and, thus, EIP is eligible for a fee award.  The Court has further determined that EIP is entitled to attorneys' fees and costs (albeit in an amount that is slightly lower than the amount EIP has requested).  Accordingly, the Court will **DECLINE TO ADOPT** the Report and Recommendation, and will **GRANT IN PART**

EIP's motion, awarding a total of $36,578.50 in attorneys' fees and $422.92 in costs.  A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

### 1.    EIP's FOIA Request And Appeal

EIP is a nonprofit organization that works to "hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws[.]"  (Compl. ¶ 8.)  On November 2, 2017, EIP sent a request to GSA under the FOIA seeking "any and all records held by [GSA] for the reporting period of April 1, 2017 through September 30, 2017 submitted by either [EPA] or [DOI] to comply with 41 C.F.R. § 301-70.907"—a regulation that requires agencies "to report[] on a semi-annual basis to [GSA] information about Senior Federal officials who fly aboard U.S. Government aircraft."  (Ex. 1 to Compl. at 1.)  EIP additionally explained that it was directing its request for records to GSA, rather than to EPA or DOI, because EIP was "attempting not only to determine compliance by [EPA and DOI] with ethics regulations but also to determine . . . whether [they] submitted these required reports [to GSA] and whether any submitted reports contained all the required information under 41 C.F.R. § 301-70.907."  (*Id.* at 2.)

GSA denied EIP's request the day after receiving it, explaining GSA's view that EIP must submit its request to EPA and DOI directly.  (Ex. 3 to Compl., ECF No. 1-3, at 1.)  According to the denial letter, GSA had decided that EPA and DOI were the proper recipients of EIP's FOIA request despite the fact that those agencies are required to submit travel reports to GSA, because such agencies "maintain ownership of their travel data and determine how that data is made available to the public[.]"  (*Id.*)  Given

this conclusion, GSA provided EIP with the contact information for EPA's and DOI's FOIA offices (*id.* at 1–2), and stated that this response "complete[d]" GSA's "action on this FOIA Request" (*id.* at 2).

EIP filed an administrative appeal on November 16, 2017, claiming that the FOIA required GSA to release the documents under its control, and that, even if referral was appropriate, GSA had failed to comply with its referral obligations under the FOIA by denying EIP's request.  (*See* Ex. 4 to Compl., ECF No. 1-4, at 1, 4–11.)

2.    Court Proceedings And Subsequent Disclosures

EIP filed the instant legal action on January 8, 2018, after more than eight weeks had passed without receiving a response from GSA.  In its complaint, EIP asserted that GSA had failed to comply with the FOIA's response deadlines and had improperly withheld agency records.  (Compl. ¶¶ 25–34.)  On February 12, 2018, just three days before its answer to EIP's complaint was due, GSA responded to EIP's administrative appeal, reaffirming its view that EPA and DOI were the proper agencies to respond to EIP's FOIA request.  (*See* Ex. E to Pl.'s Mot. for Fees, ECF No. 22-7, at 25–26; *see also* ECF No. 7 (noting in docket text the due date for GSA's answer).)  GSA also confirmed that it had "not yet provided a copy of [EIP's] FOIA request to each agency who originated the records" (Ex. E to Pl.'s Mot. for Fees at 28), but promised to "refer [EIP's] request to the respective agencies for processing" (*id.* at 27).  GSA then sent an email to the Chief FOIA Officers at EPA and DOI, attaching its response to EIP's administrative appeal and informing the agencies of GSA's "referral . . . for further action."  (Ex. F to Pl.'s Mot. for Fees, ECF No. 22-7, at 31–32.)

GSA subsequently moved for summary judgment in this case on May 3, 2018, contending that its referral of EIP's request to EPA and DOI fulfilled its responsibilities

under the FOIA, and that EIP's claims had become moot as a result. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 15-1, at 3–4.) EIP filed a cross-motion for summary judgment shortly thereafter, vigorously contesting GSA's assertions of mootness. (*See* Pl.'s Mem. in Supp. of Combined Opp'n & Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot. for Summ. J."), ECF No. 16-1, at 12–13.) In its cross-motion, EIP explained that it had not received any records in response to the FOIA request, and that GSA's referral was both inappropriate and inadequate. (*See id.* at 6.) In this regard, EIP noted that GSA's referral emails to EPA and DOI did not include the responsive documents, EIP's FOIA request, or EIP's administrative appeal; instead, GSA had merely attached its own response to EIP's administrative appeal, and that correspondence had misstated EIP's address, misspelled the name of EIP's primary lawyer, and failed to provide accurate contact information for EIP. (*Id.* at 18–19.) EIP also insisted that GSA had not come anywhere close to discharging its duties under the FOIA, as GSA retained responsibility over EIP's FOIA request and was required to ensure that EPA and DOI processed the request accordingly. (*See id.* at 12–13, 22–24.)

Less than one month after EIP filed its cross-motion for summary judgment, GSA sent an email to the FOIA offices at EPA and DOI, attaching EIP's FOIA request and asking the respective agencies to copy GSA on their "acknowledgement letter" to EIP. (*See* Ex. G to Pl.'s Mot. for Fees at 34–35.) GSA also notified EIP that its FOIA request had been referred to the agencies for processing (*see id.*), and a few weeks later, EPA and DOI released the responsive documents to EIP in full, which amounted to seven pages of records (*see* Exs. H & I to Pl.'s Mot. for Fees at 37–47). In light of this development, on July 9, 2018, EIP asked GSA to (1) confirm that the reports produced

5

by EPA and DOI were "the same records and contain[ed] all information received by GSA from each respective agency[,]" and (2) specify the dates on which the agencies had submitted the reports to GSA.  (Ex. J to Pl.'s Mot. for Fees at 50.)  EIP further explained that if GSA complied with this request, EIP would "agree to dismiss its claims except [its] claim for attorneys' fees and costs."  (*Id.*)  GSA responded to EIP the following day, verifying that the reports in its possession were consistent with those produced by EPA and DOI, and providing the dates on which each report was submitted.  (Ex. A to Pl.'s Mot. for Fees at 3.)  The parties then notified the Court that all disputes had been resolved, aside from the issue of attorneys' fees and costs.  (*See* Joint Mot. to Stay at 1.)

### 3.   EIP's Motion For Attorneys' Fees And Costs

On September 19, 2018, EIP filed a motion for an award of attorneys' fees and costs.  (*See* Pl.'s Mot. for Fees at 1.)  In its motion, EIP contends that it "'substantially prevailed'" in this litigation—and is thus eligible for a fee award under the FOIA— because its lawsuit "served as the catalyst for GSA's proper referral and the subsequent release" of the requested reports.  (Pl.'s Mem. at 8 (quoting 5 U.S.C. § 552(a)(4)(E)).)  With respect to this contention, EIP identifies two points in the litigation at which GSA appeared to have voluntarily altered its position in reaction to EIP's lawsuit.  First, despite having initially insisted that EIP must submit a FOIA request directly to EPA and DOI, after EIP filed the instant complaint, GSA reversed course and agreed to refer EIP's request to the two agencies.  (*See id.* at 19–21.)  Second, although GSA argued in its motion for summary judgment that it had fully discharged its duties under the FOIA, GSA nevertheless re-referred EIP's request to EPA and DOI after EIP filed a cross- motion that pointed out the flaws in GSA's prior referral.  (*See id.* at 21–23.)  EIP also

6

maintains that it has satisfied the factors that courts consider when determining whether a party is entitled to a fee award under the FOIA (*see id.* at 25–39), and that its requested fee award is appropriate (*see id.* at 40–43; *see also* Pl.'s Reply in Supp. of Mot. for Fees ("Pl.'s Reply"), ECF No. 24, at 22–23).

GSA opposes EIP's motion, contending that EIP is neither eligible for nor entitled to attorneys' fees and costs.  (Def.'s Opp'n to Pl.'s Mot. for Fees ("Def.'s Opp'n"), ECF No. 23, at 4, 7.)  As an initial matter, GSA maintains that the agency consistently stated that referral to the originating agencies was appropriate, and that EIP's lawsuit in no way prompted GSA to change its position on that issue.  (*See id.* at 6.)  GSA also asserts that, even though the agency was slow to respond to EIP's administrative appeal, the delay was due to "the agency's significant backlog of FOIA requests and appeals[,]" not EIP's lawsuit.  (*Id.*; *see also* Decl. of Travis Lewis in Supp. of Opp'n, Ex. 1 to Def.'s Opp'n, ECF No. 23-1, ¶ 7 (explaining that the agency had around "265 open FOIA requests and appeals" at the time it received EIP's FOIA request, and "approximately 190" of those cases "were backlogged due to GSA receiving over 400 more FOIA requests and appeals than GSA received in the previous year").)  GSA also argues that EIP is not entitled to recover attorneys' fees under the circumstances presented in this case, because GSA's response to EIP's FOIA request was entirely reasonable (*see* Def.'s Opp'n at 7), and any procedural errors in the agency's initial referrals were rectified (*see id.* at 9).  Finally, if the Court decides that fees are warranted, GSA urges the Court to reduce EIP's requested award because the nature of the instant proceedings was highly straightforward (*id.* at 11), and EIP's use of numerous attorneys in this matter amounts to "excessive staffing" (*id.* at 12).

On August 22, 2019, Magistrate Judge Robinson issued a Report and Recommendation on EIP's motion for attorneys' fees and costs.  (*See* R. & R. at 7.)  In her report, Magistrate Judge Robinson recommended denying EIP's motion, on the ground that EIP has "failed to demonstrate that it 'substantially prevailed' in the underlying litigation, and thus, is eligible for an award of attorneys' fees and costs." (*Id.* at 5.)  In reaching that decision, Magistrate Judge Robinson found that GSA did not change its position at any point during the pendency of the lawsuit, since she viewed GSA as having referred EIP to EPA and DOI "in the initial denial of [EIP's] FOIA request" and then as merely "follow[ing] up with EPA and DOI on June 12, 2018" in connection with its referral.  (*Id.* at 6.)  The Report and Recommendation also underscored GSA's assertion that its delay in responding to EIP's administrative appeal was due to a serious backlog of FOIA requests and appeals.  (*See id.* at 6–7.)  Given these findings, Magistrate Judge Robinson concluded that EIP's proffered evidence illustrates a mere "correlation, not a causal nexus, between the filing of the instant action and the release of documents[,]" which is insufficient to establish eligibility for fees.  (*Id.* at 6.)  And because eligibility is a threshold requirement for recovery of attorneys' fees and costs under the FOIA, Magistrate Judge Robinson did not proceed to address EIP's entitlement to attorneys' fees and costs or the reasonableness of its requested award.  (*See id.* at 7 n.2.)

On September 5, 2019, EIP filed the timely objections to the Report and Recommendation that are before this Court at present.  EIP challenges Magistrate Judge Robinson's factual findings and legal conclusions (*see* Pl.'s Objs. at 6–11), and in particular, EIP contends that the Report overlooks the fact that GSA did not "accept[]

responsibility for responding to the FOIA request" or for "confirming that the travel reports ultimately released were identical to the documents in [GSA's] possession" until *after* EIP filed its cross-motion for summary judgment (*id.* at 7). EIP further maintains that the Report and Recommendation mistakenly characterizes GSA's initial denial of the FOIA request as a referral (*see id.* at 8), and that Magistrate Judge Robinson did not account for GSA's obligation to ensure that its referrals had been processed (*see id.* at 8–9). EIP also insists that GSA's "'administrative backlog' excuse" is "untimely and illogical[,]" especially considering that GSA had sufficient wherewithal to deny EIP's initial FOIA request the day after it was filed. (*Id.* at 10.) EIP thus asks this Court to overrule Magistrate Judge Robinson's Report and Recommendation and award reasonable attorneys' fees and costs. (*See id.* at 11; Pl.'s Reply in Supp. of Obj. at 8.)

## II.    LEGAL STANDARDS

Section 552(a)(4)(E) of the FOIA provides courts with discretion to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" during a FOIA lawsuit "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To recover attorneys' fees and costs, a plaintiff must demonstrate both eligibility for and entitlement to a fee award. *See, e.g.*, *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Plaintiffs are eligible for a fee award if they "substantially prevail[]" in the lawsuit by "obtain[ing] relief through" (1) "a judicial order," or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Brayton*, 641 F.3d at 525. This second method of eligibility, often referred to as the "catalyst" theory, requires the

plaintiff to prove that the lawsuit "could reasonably be regarded as necessary" to obtain relief, and that "the litigation substantially caused the requested records to be released[.]" *See Dorsen v. SEC*, 15 F. Supp. 3d 112, 118 (D.D.C. 2014) (internal quotation marks and citations omitted).  The FOIA broadly defines "relief" to include the "taking of . . .  action on the application or petition of, and beneficial to, a person[,]" 5 U.S.C. § 551(11), and whether a lawsuit was reasonably necessary to obtain such relief is assessed from the plaintiff's perspective, *see Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 872 (D.C. Cir. 1981).  "[T]he mere filing of the complaint and the subsequent release of documents is insufficient to establish causation" for purposes of the catalyst theory; however, such timing remains "a salient factor in the [Court's] analysis[.]" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (internal quotation marks and citations omitted).  Even so, if "a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [the] suit." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981) (citation omitted).

A plaintiff who establishes eligibility for attorneys' fees and costs under the FOIA must also demonstrate an entitlement to receive a fee award. *See Dorsen*, 15 F. Supp. 3d at 120.  Courts in this circuit employ a four-factor balancing test to assess entitlement to attorneys' fees and costs—those factors include "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's

withholding of the requested documents." *Id.* at 117 (internal quotation marks and citation omitted).  None of these factors is dispositive.  *Id.*  What is more, in evaluating a plaintiff's entitlement to fees, courts must keep in mind the underlying purpose of awarding fees in FOIA cases: to encourage plaintiffs to bring FOIA lawsuits that further the public interest, and to compensate plaintiffs for "enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA's] requirements."  *ACLU v. U.S. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 276 (D.D.C. 2011) (internal quotation marks and citation omitted).

Once a plaintiff establishes an entitlement to attorneys' fees and costs, one final hurdle must be cleared: demonstrating that the requested fees and costs are reasonable.  *See Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012).  Under D.C. Circuit precedent, the "usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount."  *Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 168 (D.D.C. 2018) (internal quotation marks and citation omitted).  A court may reduce any part of a requested fee award that it deems unreasonable, and it retains discretion to determine how and to what extent any such reduction should be made.  *See Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980).

Finally, where, as here, a motion for attorneys' fees comes to the Court after a Magistrate Judge has issued a contested Report and Recommendation on the matter, the Court must review the motion *de novo* and may "accept, reject, or modify the

recommended disposition[.]"  Fed. R. Civ. P. 72(b)(3); *see also* Fed. R. Civ. P. 54(d)(2)(D).

## III.   DISCUSSION

Based on its review of the parties' filings and the record evidence, this Court concludes that EIP is both eligible for and entitled to a fee award under the FOIA.  The Court has also determined that EIP's requested fees are reasonable, with the exception of the hours expended reviewing and recalculating billing entries.  Accordingly, the Court declines to adopt the Magistrate Judge's recommendation, and will award EIP $36,578.50 in attorneys' fees and $422.92 in costs.

### A.   EIP Is Eligible For Attorneys' Fees And Costs Because Its Lawsuit Substantially Caused GSA To Change Its Positions

EIP contends that it substantially prevailed in this litigation under the catalyst theory of eligibility, because its lawsuit elicited two changes in GSA's position: (1) GSA decided to refer EIP's request to EPA and DOI directly, on February 12, 2018, after initially directing EIP to submit its request to both agencies, and (2) GSA re-referred EIP's request to EPA and DOI on June 12, 2018, after insisting that it had already discharged its duties under the FOIA.  (*See* Pl.'s Mem. at 19–23.)  As explained above, in order to prevail under the catalyst theory of eligibility, EIP must demonstrate that its lawsuit was reasonably "necessary and causally linked to the release of the documents obtained[,]" *Church of Scientology*, 653 F.2d at 588, and that the agency's response was not merely the result of "extrinsic factors" having little to do with EIP's lawsuit, *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016).  In this Court's view, the record plainly supports EIP's argument that its lawsuit substantially caused GSA to change its position on both of the identified issues.

1.   <u>EIP Substantially Caused GSA To Change Its Position On Direct Referral</u>

Starting with GSA's decision to refer EIP's request to EPA and DOI directly, it is clear to this Court that GSA's direct-referral decision represented a change from GSA's original position concerning its own duties.  In its initial response to EIP's FOIA request, GSA disclaimed any responsibility for providing the requested records; indeed, it expressly proclaimed that, "in order to obtain the travel information requested, [EIP] should submit [its] request directly to the agencies."  (Ex. 3 to Compl. at 1.)  Nothing about GSA's response indicated any intention of referring EIP's FOIA request to the agencies on its own—to the contrary, GSA unequivocally announced that its advice to EIP regarding how EIP should proceed "complete[d] [the agency's] action on this FOIA request."  (*Id.* at 2.)  GSA has subsequently characterized its response as a "decision to refer EIP's FOIA request to [DOI] and [EPA] for processing" (Decl. of Travis Lewis in Supp. of Opp'n ¶ 5; Decl. of Travis Lewis in Supp. of Mot. for Summ. J., Ex. 3 to Def.'s Mot. for Summ. J., ECF No. 15-3, ¶ 10), but that description finds no support in the record (*see* Ex. 3 to Compl. at 1–2 (providing the contact information of EPA and DOI to EIP so that EIP could resubmit its FOIA request to those agencies)).  What the record *does* show is that GSA did not agree to refer EIP's request to the agencies until approximately three months after EIP filed an administrative appeal that argued that GSA had such a duty, and the direct referral was made just three days before GSA's answer to EIP's complaint in this action was due.  (*See* Ex. E to Pl.'s Mot. for Fees at 27; *see also* Def.'s Mot. for Summ. J. at 5 (admitting that "[a]lthough GSA originally notified [EIP] that it should submit its request directly to EPA and DOI, GSA did in fact later refer [EIP's] FOIA requests to the originating agencies").)

To be sure, the fact that GSA responded to EIP's appeal shortly after the lawsuit was filed—and promised, for the first time, to refer EIP's FOIA request to EPA and DOI directly—does not establish causation on its own.  *See Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984).  For example, if GSA's belated response to EIP's appeal was the result of "unavoidable delay accompanied by due diligence in the administrative process[,]" there would be no reason to infer that EIP's lawsuit was the catalyst for GSA's subsequent actions.  *Church of Scientology*, 653 F.2d at 588 (citation omitted).  GSA predictably attempts to argue that there is no causal nexus between EIP's lawsuit and its own response to EIP's appeal on this basis, by asserting that it had "approximately 265 open FOIA requests and appeals" at the time it "received [EIP's] FOIA request" (Decl. of Travis Lewis in Supp. of Opp'n ¶ 7), and that its untimely response to EIP's appeal was "due to the agency's significant backlog of FOIA requests and appeals" (Def.'s Opp'n at 6).  GSA also specifically maintains that EIP's initiation of the lawsuit "did not cause GSA to respond to [EIP's] FOIA Appeal."  (Decl. of Travis Lewis in Supp. of Opp'n ¶ 8.)  But any such administrative constraints do not rationally account for GSA's change of heart concerning *which* entity (GSA or EIP) bore responsibility for referring the FOIA request to the other agencies.

Moreover, and in any event, GSA's backlog-related assertions are far too vague or conclusory to demonstrate that an intractable delay occurred in this case.  For one thing, GSA has not provided any explanation of *how* the alleged administrative backlog impacted its ability to respond to EIP's administrative appeal.  GSA does not point to a policy of reviewing and processing FOIA appeals in the order they are submitted, for instance; nor does it allege that it has only a few employees in charge of dealing with

FOIA appeals. *See Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016). Indeed, GSA has not made any effort whatsoever to connect the dots between the number of open FOIA cases it had at the time EIP submitted its request and GSA's failure to process EIP's appeal in a timely manner. And it is also noteworthy that GSA was able to deny EIP's request for records just one day after EIP submitted the request notwithstanding the alleged administrative backlog (*see* Ex. 3 to Compl. at 1–2), which suggests that GSA has *some* procedure in place for streamlining its responses to FOIA requests under certain circumstances.

Even if the Court credits GSA's bare assertions of administrative backlog at the time EIP filed its complaint, there is little indication that such backlog delayed any diligent processing of EIP's appeal on GSA's part. *See Church of Scientology*, 653 F.2d at 588 (explaining that no causal nexus exists if there is evidence of "unavoidable delay *accompanied by due diligence* in the administrative process[]" (emphasis added) (citation omitted)). GSA's FOIA and Records Management Director, Travis Lewis, avers that he contacted GSA's Assistant General Counsel "[u]pon receipt" of EIP's appeal and sent him copies of EIP's request and appeal, but Lewis did not provide any specific dates for when this contact occurred or when he began "consulting" with the Assistant General Counsel about the appeal. (Decl. of Travis Lewis in Supp. of Mot. for Summ. J. ¶ 9.) It is also telling that, in describing GSA's response to EIP's appeal "[u]pon [its] receipt[,]" Lewis focuses only on his mutual agreement with the Assistant General Counsel that EPA and DOI were the proper parties to respond to EIP's request, and he omits any discussion of when (or how) he reached the decision to refer EIP's

request directly to the agencies instead of requiring EIP to resubmit the request to EPA and DOI on its own.  (*See id.*)

Based on Lewis's representations and the record as a whole, it is not at all clear that GSA had started to process EIP's appeal before EIP filed the instant lawsuit, nor is it evident that GSA would have changed its position on direct referral had EIP not filed its complaint.  Instead, given GSA's "sudden acceleration" in processing EIP's appeal after EIP filed its complaint, *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 41 (internal quotation marks and citation omitted), and its vague assertions of administrative backlog, the Court concludes that it was reasonable for EIP to believe that litigation was necessary to obtain the requested records, and that EIP's filing of this lawsuit prompted GSA to respond to EIP's appeal and agree to refer EIP's request directly to EPA and DOI.[2]

> 2.   EIP Substantially Caused GSA To Re-Refer The FOIA Request
>       After GSA Insisted That It Had Fulfilled Its Duties

The Court is also persuaded that EIP is eligible for attorneys' fees based on GSA's second change in position: specifically, its decision to re-refer EIP's FOIA request to EPA and DOI after maintaining that it had fully discharged its duties under the FOIA.  As previously explained, GSA moved for summary judgment in this case after responding to EIP's appeal, and its motion asserted that EIP's claims were moot in light of GSA's referral of EIP's FOIA request to EPA and DOI.  (Def.'s Mot. for Summ. J. at 3.)  But after EIP pointed out numerous issues with GSA's initial referrals

---

[2] Notably, the Court need not find that EIP's filing of the instant lawsuit was the *sole* reason for GSA's change in position in order to conclude that EIP is eligible for fees; instead, it is sufficient that the lawsuit substantially caused GSA to alter its position.  *See Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 224 (D.D.C. 2018).  The Court is persuaded that that requirement has been satisfied here, for the reasons discussed above.

GSA changed its tune (*see* Pl.'s Cross-Mot. for Summ. J. at 18–19); it promptly sent *another* round of emails to EPA and DOI, attaching EIP's FOIA request and explaining that GSA "[was] referring this matter" for processing (Ex. G to Pl.'s Mot. for Fees at 34–35). That action is manifestly inconsistent with GSA's prior insistence that the original referrals mooted EIP's claims. And because GSA's re-referral emails appear to have been tailored to include most of the information that EIP had faulted GSA for omitting in the initial referrals, this Court has little doubt that the arguments EIP made in the context of this lawsuit substantially caused GSA to re-refer EIP's request. (*Compare* Pl.'s Cross-Mot. for Summ. J. at 17–19, 24 (noting that GSA had not attached EIP's FOIA request in its initial referrals; that GSA had not provided the agencies with any accurate contact information for EIP; and that EIP had not received any acknowledgment from EPA or DOI regarding the referral), *with* Ex. G to Pl.'s Mot. for Fees at 34–35 (showing that GSA attached EIP's FOIA request to its re-referral emails, copied EIP on the emails, and asked the agencies to copy GSA on its "acknowledgment letters" to EIP).)

GSA's proclamation that, regardless of the re-referrals, EIP's lawsuit was "unnecessary" and "the suit did not expedite [EPA's and DOI's] responses" (Def.'s Resp. to Pl.'s Objs. at 5) is likewise unpersuasive, because the record evidence strongly suggests otherwise. For instance, in the letter that DOI sent to EIP in response to EIP's FOIA request, DOI indicated that it had received EIP's records request and had assigned the request a control number on June 12, 2018—the date of GSA's *re*-referral. (Ex. I to Pl.'s Mot. for Fees at 42.) Plus, in the re-referral email that GSA sent to EPA in the wake of EIP's cross-motion for summary judgment, GSA stressed that "[t]his is a

17

very time sensitive matter" and that EPA's "prompt attention to this matter is greatly appreciated."  (Ex. G to Pl.'s Mot. for Fees at 35.)

Thus, contrary to GSA's assertions, the record demonstrates that GSA's re-referrals *did* precipitate EPA's and DOI's responses to EIP's FOIA request, and, for the reasons already stated, the Court finds that EIP's lawsuit substantially caused GSA to make those re-referrals.  Accordingly, the Court concludes that EIP is eligible for attorneys' fees and costs.

**B.    EIP Is Entitled To Attorneys' Fees And Costs**

As explained earlier, courts in this circuit typically consider four factors to evaluate an eligible plaintiff's entitlement to fees under the FOIA: (1) whether the plaintiff's case serves a public benefit; (2) whether the plaintiff obtained any commercial benefit from the lawsuit; (3) "the nature of the plaintiff's interest in the records"; and (4) whether the agency had a reasonable basis for withholding the requested records.  *Conservation Force*, 160 F. Supp. 3d at 202 (internal quotation marks and citation omitted).  This Court finds that all four of these factors weigh in EIP's favor, and thus that EIP is entitled to a fee award.

1.    EIP's Lawsuit Served A Public Benefit

Beginning with the first factor, there is no question that the public derived a benefit from EIP's lawsuit.  (*See* Def.'s Opp'n at 7–10 (citing the D.C. Circuit's four-factor test and discussing only the reasonableness of GSA's conduct).)  To serve a public benefit, the records that a FOIA requester seeks must be "likely to add to the fund of information that citizens may use in making vital political choices[,]" *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal quotation marks and citation omitted), and must also have "at least a modest probability of generating useful new

18

information about a matter of public concern[,]" *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016).  In its motion for attorneys' fees, EIP contends that the public derived an important benefit from the lawsuit, because "at the time of EIP's request, there were significant national controversies concerning frequent, excessive, and potentially illegal travel expenditures" by the EPA Administrator and the Secretary of the Interior, which raised questions about the "potential abuse of taxpayer money" and the agencies' adherence to federal travel reporting requirements.  (Pl.'s Mem. at 25–26.)  To bolster this contention, EIP cites to various news articles that discuss investigations into EPA's and DOI's use of taxpayer funded flights and the agencies' compliance with relevant ethics requirements (*id.* at 25–27), and it argues that its FOIA request contributed to the public's knowledge of those issues (*see id.* at 26–27).  EIP also notes that, by seeking and obtaining the requested records, it was able to expose the fact that EPA had failed to provide all of the necessary information in its reports to GSA, and, as a consequence, EIP "forwarded the records it obtained to the EPA Office of Inspector General[] to assist in [the Office's] on-going ethics reviews."  (*Id.* at 27.)

Given "the specific documents at issue" in this case, *Cotton*, 63 F.3d at 1120, and in light of the public's evident interest in these agencies' compliance with federal travel regulations, the Court agrees with EIP that the public benefit factor weighs in its favor.

2.     EIP Did Not Obtain A Commercial Benefit From Its Lawsuit, And Public-Interest Concerns Motivated Its Request For Records

The Court reaches the same conclusion with respect to the second and third entitlement factors—the commercial benefit that the plaintiff obtained and the nature of the plaintiff's interest in the records sought.  These factors are "closely related and

often considered together[,]" and are typically satisfied when "the plaintiff is a nonprofit public interest group" bringing a FOIA suit "motivated by . . . public interest concerns[.]" *Elec. Priv. Info. Ctr.*, 811 F. Supp. 2d at 235 (internal quotation marks and citations omitted).

EIP argues that, as a "501(c)(3) nonprofit public interest organization[,]" it has "no commercial interest in the requested records [because it] sought the records at issue expressly for public dissemination on an issue of public importance[,]" and has made the records publicly available at no charge.  (Pl.'s Mem. at 28.)  Based on these representations—which GSA does not dispute—the Court finds that the "commercial benefit" and "nature of interest" factors weigh in EIP's favor as well.

### 3.   GSA Did Not Have A Reasonable Basis For Failing To Refer EIP's Request Directly And In An Adequate Manner

The remaining factor, and the only one that GSA explicitly contests, is the reasonableness of the agency's withholdings.  In analyzing this factor, courts must ask "whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency . . . [was] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Cornucopia Inst.*, 285 F. Supp. 3d at 226 (alterations in original) (internal quotation marks and citations omitted).  The agency bears the burden of showing that it had a "colorable or reasonable basis" for its actions, and the D.C. Circuit has made clear that an agency cannot "defeat an award of fees by citing a lack of resistance after the requester files a lawsuit to obtain requested documents[.]" *Davy v. CIA*, 550 F.3d 1155, 1163 (D.C. Cir. 2008).

In its motion for attorneys' fees, EIP contends that GSA lacked a reasonable basis in law for three of its actions: its decision that EPA and DOI were the appropriate

agencies to respond to EIP's request; its failure to refer the documents to the agencies directly until after EIP filed the instant complaint; and its failure to "properly refer" EIP's request until after EIP filed its cross-motion for summary judgment. (Pl.'s Mem. at 29.)  The Court need not determine the reasonableness of GSA's decision to refer EIP's request, because even assuming that a referral was warranted, GSA has not offered any reasonable basis for failing to refer EIP's request to the agencies promptly and in an adequate manner.

It is well established that "when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request[,]" and may not "refuse to act on the ground that the documents originated elsewhere." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).  Although an agency may refer documents in its possession "to the originating agency for processing[,]" *Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 279 (D.D.C. 2015) (internal quotation marks and citation omitted), the agency's referral procedures must be reasonable and cannot amount to an improper withholding of documents, by, for instance, significantly "impair[ing] the requester's ability to obtain the records" or by significantly "increas[ing] the amount of time [the requestor] must wait to obtain them[,]" *McGehee*, 697 F.2d at 1110.  The D.C. Circuit has not "adopted a 'bright line' rule for when referral of responsive records to another agency constitutes an improper withholding[.]"  *Unrow*, 134 F. Supp. 3d at 279.  However, the Circuit has identified certain factors that courts should consider when making this determination, such as whether "the referral was prompt and public[,]" and whether the procedure imposed a burden on the requestor by requiring it to "file a separate FOIA request [with] the

originating agency." *Id.* at 280 (internal quotation marks and citations omitted); *see also McGehee*, 697 F.2d at 1110 (explaining that a procedure that required requestors to "submit separate requests to a number of independent bodies" or that "resulted in very long delays would be highly difficult [for an agency] to justify").

In the instant case, GSA's referral procedure plainly impaired EIP's ability to obtain the requested records promptly. That is, when GSA first received EIP's FOIA request, it did not even attempt to refer the request to EPA and DOI directly; rather, it put the onus on EIP to file separate requests with each agency. (*See* Ex. 3 to Compl. at 1–2.) And, notably, GSA's response not only placed a significant burden on EIP, but also contravened GSA's own regulations, which, at the time EIP submitted its FOIA request, provided that "[i]f GSA receives a request for access to records that are known to be the primary responsibility of another agency, *GSA will refer the request to the agency concerned* for appropriate action." 41 C.F.R. § 105-60.104 (2017) (emphasis added). Furthermore, when GSA later did refer EIP's request to EPA and DOI, it failed to ensure that it had provided both agencies with EIP's proper contact information, and did not attach a copy of EIP's request or the responsive documents. (*See* Ex. F to Pl.'s Mot. for Fees at 31–32.) Moreover, and likewise, when multiple months passed without any production of records, GSA made no effort to follow up with the agencies to confirm receipt of the referral or to ensure that they were processing EIP's request. Instead, GSA filed a motion in this Court insisting that it had fulfilled all of its duties under the FOIA (*see* Def.'s Mot. for Summ. J. at 3), despite its obligation to "take responsibility" for processing EIP's request, *McGehee*, 697 F.2d at 1110; *see also Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) ("Because the agency

who received the FOIA request . . . is the agency ultimately responsible for responding to the request, the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere."); *Hall v. CIA*, 668 F. Supp. 2d 172, 182 (D.D.C. 2009) (holding that an agency that received and referred a FOIA request remained responsible for responding to the request and was required to "take affirmative steps to ensure that its referrals [were] being processed").

On these facts, it is difficult to imagine how GSA's referral process could be characterized as reasonable, and GSA's efforts to rationalize its response (*see* Def.'s Opp'n at 8–9) are largely based on inaccurate assumptions and are, therefore, wholly unpersuasive.  For example, GSA's contention that the agency's initial response was sufficient because it dutifully provided EIP with the contact information of the FOIA offices at those two agencies (*see id.* at 8) misunderstands the "referral" duty in this context.  When an agency makes a referral to another agency, it is the FOIA request or the responsive document that is being referred—not the requestor itself.  *See Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 92 (D.D.C. 2011).  This Court is not aware of any authority suggesting that an agency's mere provision of the originating agency's contact information to the requestor constitutes a proper referral under the FOIA, and GSA has not cited any case to that effect.  *Cf. Tax Analysts v. U.S. Dep't of Just.*, 845 F.2d 1060, 1067 (D.C. Cir. 1988) ("[I]n response to a FOIA request, an agency must *itself* make disclosable agency records available to the public and may not on grounds of administrative convenience avoid this statutory duty by pointing to another public source for the information."), *aff'd*, 492 U.S. 136 (1989).

As for the actual referral that GSA belatedly made to EPA and DOI after responding to EIP's appeal, GSA has not offered any "reasonable explanation for its procedure." *McGehee*, 697 F.2d at 1110.  Instead, the agency merely highlights the fact that it *did* make the referrals after its initial provision of EPA's and DOI's contact information, and that it ultimately corrected any "procedural errors" in those referrals. (Def.'s Opp'n at 9; *see also* Def.'s Resp. to Pl.'s Objs. at 5–6.)  GSA points to various cases that purportedly stand for the broad proposition that "administrative errors do not entitle [a plaintiff] to recover fees or costs" (Def.'s Opp'n at 9), but the cited authorities involve unavoidable administrative delays, and none of them actually support GSA's suggestion that an agency's errors in the referral process itself cannot give rise to attorneys' fees and costs under the FOIA, *see Jud. Watch, Inc.*, 878 F. Supp. 2d 225; *Hart v. U.S. Dep't of Health & Hum. Servs.*, 676 F. Supp. 2d 846 (D. Ariz. 2009); *Hersh & Hersh v. U.S. Dep't of Health & Hum. Servs.*, No. 06-cv-4234, 2008 WL 2725497 (N.D. Cal. July 10, 2008).  And to the extent that GSA seeks to excuse its inadequate referral on the grounds of administrative delay, the record does not contain any indication that administrative delays influenced GSA's referral, let alone that GSA exercised due diligence in making the referral or proactively correcting its mistakes.

Thus, GSA has failed to demonstrate that its actions had a reasonable basis in law, which means that the fourth entitlement factor also weighs in EIP's favor.  This means that all four entitlement factors support EIP's request for a fee award, and the Court therefore concludes that EIP is entitled to attorneys' fees and costs.

### C.   With The Exception Of Fees Related To Reviewing And Recalculating Billing Entries, EIP's Requested Fees Are Reasonable

Having found that EIP is both eligible for and entitled to a fee award, the only question remaining is what amount of attorneys' fees and costs EIP should receive. In the instant case, EIP has requested $36,885.50 in attorneys' fees and $422.92 in costs, which reflects the 109.25 hours that four of its attorneys worked on this case, and the filing and postage fees associated with initiating the lawsuit. (*See* Exs. L–N to Pl.'s Mot. for Fees, ECF No. 22-7, at 56–64; Ex. A to Pl.'s Reply, ECF No. 24-1, at 2; Pl.'s Mem. at 8; Pl.'s Reply at 23.)  In this jurisdiction, courts calculate fee awards by multiplying a reasonable hourly rate by the number of hours reasonably expended in the litigation—including the hours spent preparing a request for fees. *See, e.g.*, *Reyes*, 356 F. Supp. 3d at 168–69, 173.  In determining the reasonableness of the plaintiff's billed hours and fees, courts must ensure that the attorneys "exercised good billing judgment" and did not "waste or otherwise unnecessarily spend time on the matter[.]" *Elec. Priv. Info. Ctr.*, 811 F. Supp. 2d at 237 (internal quotation marks and citations omitted).  This Court has reviewed the billing entries and declarations that EIP's attorneys have submitted, and it finds that EIP's requested fee award is reasonable, with the exception of the fees involved in reviewing and correcting billing entries, as explained in more detail below.

To begin, there is no dispute that EIP's requested hourly rates are reasonable. (*See* Pl.'s Mem. at 40–41; Def.'s Opp'n at 10–13.)  To calculate the hourly rates for each of its attorneys, EIP used the USAO's Revised 2015-2019 Matrix, which sets standard hourly rates for lawyers in the District of Columbia based on differing levels of experience. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). The declarations that EIP has submitted describe its attorneys' legal experience and

identify the particular category of hourly rates applied to each attorney under the Matrix.  (*See* Decl. of Sylvia Lam, ECF No. 22-3, ¶¶ 3–8, 12–17; Decl. of Eric V. Schaeffer, ECF No. 22-4, ¶¶ 4–14; Decl. of Sanghyun Lee, ECF No. 22-5, ¶¶ 2–9; Decl. of Adam Kron, ECF No. 22-6, ¶¶ 3–10.)  Based on these submissions, and the fact that GSA does not contest EIP's use or application of the USAO Matrix, the Court is satisfied that the hourly rates requested by EIP are reasonable.  *See, e.g.*, *Reyes*, 356 F. Supp. 3d at 169 n.2 (finding hourly rates reasonable where USAO Matrix was used and the defendant did not dispute that the rates were fair).

As for the time spent on this litigation, the Court has determined that EIP's requested hours must be reduced slightly, but not for the reasons that GSA has asserted. In its opposition to EIP's motion for fees, GSA contends that EIP's requested award is patently unreasonable for two reasons.  First, GSA argues that EIP's requested award is excessive in light of the simple nature of this case.  (*See* Def.'s Opp'n at 11–12.)  GSA emphasizes that EIP "received all responsive records, with no redactions, prior to the parties' completion of briefing and without the need for a judicial order" (*id.* at 12), and it urges this Court to follow *Cornucopia Institute v. Agricultural Marketing Service*, 285 F. Supp. 3d 217 (D.D.C. 2018), which is a case in which the court reduced a requested fee award after noting that the "merits [of the case] were resolved quickly in a straightforward manner," *id.* at 227.

GSA's argument is problematic for several reasons.  First of all, even though EIP ultimately received the requested records without completing summary judgment briefing, the Court has found that EIP was only able to obtain those records by bringing the instant lawsuit and opposing GSA's motion for summary judgment.  *See Elec. Priv.*

*Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 350 (D.D.C. 2014) (rejecting defendant's argument that the hours plaintiff billed for preparing "what should have been a simple complaint" were excessive, and noting that "the time [plaintiff] spent preparing the Complaint was incurred only because of [defendant's] admitted failure to comply with the law").  And the fact that the case did not require extensive briefing is adequately reflected in EIP's billing records, which log a reasonable amount of time for the limited tasks involved in the parties' litigation of the merits.  GSA's citation to *Cornucopia Institute* is also misplaced, insofar as the parties in that case resolved the dispute "without *any* briefing[,]" and the *Cornucopia Institute* court's reduction of the requested award also appears to have been motivated by the fact that the time the parties spent litigating the fee issue was vastly disproportionate to the time they spent litigating the merits of the plaintiff's legal claims.  285 F. Supp. 3d at 227–28 (emphasis added).  By contrast, here, the number of hours spent on the merits was roughly equal to the time expended on EIP's request for fees, and both stages of the litigation involved a similar amount of briefing.  (*See* Exs. L & M to Pl.'s Mot. for Fees at 56–58, 60–61; Ex. A to Pl.'s Reply at 2.)

As a second basis for the fee-reduction argument, GSA maintains that EIP's use of four attorneys on this matter was excessive.  (*See* Def.'s Opp'n at 12–13.)  In this regard, GSA asserts that EIP lacked any reasonable basis to staff so many attorneys on such a simple matter, especially given that three of EIP's attorneys had over ten years of legal experience.  (*Id.* at 12.)  But a close review of EIP's billing records provides no indication that EIP's staffing was unreasonable; in fact, two out of the four attorneys spent a combined total of only 5.25 hours on the matter, and that time largely consisted

of reviewing and editing the work of junior attorneys.  (*See* Exs. L & M to Pl.'s Mot. for Fees at 57–58, 60–61; Ex. A to Pl.'s Reply at 2.)  Moreover, unlike the cases upon which GSA relies (*see* Def.'s Opp'n at 12 (citing *Bloomgarden v. U.S. Dep't of Just.*, 253 F. Supp. 3d 166 (D.D.C. 2017), and *Copeland*, 641 F.2d 880)), there is no evidence of duplicative billing for a single task, and GSA has not pointed to any billing entries that suggest otherwise.  Indeed, EIP "preemptively" decreased the actual hours expended in order to avoid any overbilling, by "reducing percentages of hours to account for inefficiencies, and including only one attorney's billable hours for internal and external conferences which actually involved the participation of multiple EIP attorneys."  (Pl.'s Mem. at 43.)  That representation is consistent with this Court's review of the billing records, and the Court finds that it was reasonable for EIP to use multiple attorneys in this case, as reflected in those records.

That said, the Court will exercise its discretion to reduce EIP's requested fees by $307, in order to account for three billing entries that the Court deems unreasonable: namely, the entries for time spent reviewing and correcting billing records.  *Cf. ACLU*, 810 F. Supp. 2d at 279 (noting that courts should "exclude" from the fee award "hours that were not 'reasonably expended'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).  Although the billed time for these entries adds up to only one hour (*see* Ex. M to Pl.'s Mot. for Fees at 60–61), EIP "had an ongoing duty throughout the litigation to maintain an accurate record of its time," *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 52, and GSA should not be required to compensate EIP for administrative work that can be characterized as unnecessary or redundant, *see Hensley*, 461 U.S. at 434.

## IV.    CONCLUSION

For the foregoing reasons, and as set forth in the accompanying Order, the Court concludes that EIP is eligible for and entitled to attorneys' fees and costs in this matter. The Court also finds that EIP's requested fee award is reasonable, with the exception of the request for the recovery of fees for time that one of EIP's attorneys spent reviewing and correcting billing entries.  Accordingly, the Court will **DECLINE TO ADOPT** Magistrate Judge Robinson's Report and Recommendation and will **GRANT IN PART** EIP's Motion for Attorneys' Fees and Costs (ECF No. 22).  As reflected in the accompanying Order, a total of $307 will be deducted from EIP's requested fees, such that EIP will be awarded $36,578.50 in attorneys' fees and $422.92 in costs.[3]


DATE:  August 6, 2021                    *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States Circuit Judge
                                         *Sitting on the District Court by Designation*

---

[3] GSA does not contest EIP's requested costs—and for good reason.  (*See* Def.'s Opp'n at 10–13.)  The requested costs cover only the filing and postage fees associated with the lawsuit (*see* Ex. N to Pl.'s Mot. for Fees at 63–64), and those expenses undoubtedly qualify as "litigation costs reasonably incurred" under the FOIA, 5 U.S.C. § 552(a)(4)(E)(i); *see also Pinson v. Lappin*, 806 F. Supp. 2d 230, 237 (D.D.C. 2011).